[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brought this action seeking a dissolution of her marriage to the defendant, custody and support of two minor children, alimony, a division of jointly, owned estate of the parties, counsel fees and such other relief. The defendant filed his answer admitting the essential allegations of the complaint. CT Page 622 He also filed a Cross Complaint seeking a dissolution, custody and support of the minor children and a reasonable assignment of the plaintiff's estate and such other relief. In the course of the hearing the plaintiff also requested a restoration of her maiden name.
Both parties appeared with counsel and testified. At the outset, I wish to state that the various criteria and factors set forth in Conn. Gen. Stats., 46b-81, 46b-82, 46b-84 and 46b-62.46b-56. 46b-56a were reviewed and considered in setting up the various orders.
The following findings of fact and conclusions are made. The plaintiff, whose maiden name was Gail F. Horan and the defendant were married on August 3, 1974 in Webster, Massachusetts. The parties have lived in Connecticut for more than one year prior to June 26, 1989, the date of the filing of the divorce complaint in this action. There are two minor children born of this union, whose names and dates of birth are as follows: Sean Roland, born January 3, 1982 and Alan Michael, born February 25, 1984. Neither of the parties nor the children have received any public assistance prior to or at the time of the hearing in this case.
When the parties married, the plaintiff was working full time in the hospital as a respiratory therapist. In addition, she worked part time at a McDonald's Restaurant. She had attained her Associate Degree in Respiratory Therapy in 1973. The defendant at that time was studying in his third year at Nichols College, Massachusetts and graduated in 1976. They both worked while he was completing his studies. After graduation he went to Rhode Island for employment and she commuted from Rhode Island working full time to 1982. The first child, Sean, was born on January 3, 1982 and she obtained a three months leave of absence. She returned to commuting to St. Vincent's Hospital in Worcester and now worked three days each week for another 1 1/2 years before cutting down further to 16 hours per week at the defendant's request.
In February 1984 she again stopped working to have the second child, Alan, born February 25, 1984. She returned to her part time work after a two months leave. In March 1986 she stopped work at her husband's request who was then working in Providence, Rhode Island. She resumed work in April, 1989 as a respiratory therapist at St. Raphael's Hospital, New Haven on a full time basis. This work stopped in August 1989 when the plaintiff sustained an arm injury in July 1989 as a result of an altercation with her husband. She was treated at the emergency room of Yale-New Haven Hospital and thereafter was examined and treated by several physicians. Her work as a therapist requires lifting of people and heavy inanimate objects which she claims an inability CT Page 623 to do because of a weakness in her arm resulting from the injury. She is able to do so-called "light work" which will not involve lifting. At the time of the hearing she did testify that, since September 1990 she had sought employment at three hospitals, a medical center and two temporary agencies. She further testified that she hoped to work about fifteen (15) hours per week at an hourly rate of $15 with no other benefits. She taught respiratory therapy at a junior college from 1976-1980 but testified that she would not be qualified to teach at this time not having a full college degree. If she secured full time employment, she stated that she expected to earn about $700.00 gross and $450.00 net.
The defendant is a banker. He is 36 years of age and she 37. After graduation he worked at a bank in Woonsocket, Rhode Island. The plaintiff had moved with him and commuted to work in Worcester, Massachusetts. Thereafter he worked at two other banks in the state enhancing his career with the moves. This continued in August of 1988 when the family moved to Connecticut. When he left Rhode Island, he was earning $48,000.00. At Connecticut Bank Trust Co. (CBT) his starting salary was $63,000.00 and had gone up to $75,000.00 at the time of the hearing in this case. The defendant also testified that the plaintiff had co-operated with him on each of his job changes. In his current employment at CBT the defendant received a $5,000.00 bonus in 1988 and one of $6,500.00 in 1989. In addition, the defendant testified to another source of income, i.e. audits performed on other banks. On one of these jobs in 1989 he was paid $500.00. The defendant also stated that for calendar year 1989, he received a refund from the Internal Revenue Service of $3,000.00, which he used to repay his parents.
There are serious conflicts in the testimony of the parties as to causes for the dissolution. The defendant testified that he was not in favor of the dissolution. The parties have sought counselling but it has not succeeded. Both have been involved at various times with members of the opposite sex in compromising situations. However, neither party actually established the other with sexual involvement with another.
I believe the plaintiff's testimony of at least three events involving violence on the part of the defendant. The last resulting in the injury to her arm and shoulder which led to her inability to perform all her duties as a respiratory therapist. These acts of violence erupted within a short span of time, April of 1989, end of May 1989 and the final one in July 1989. She had warned him after the April incident that she would seek to sever their marriage relationship, if there was anymore violence. The instant divorce action was filed on June 26, 1989 following the Memorial Day week-end assault. The defendant has not denied any of these incidents but did not believe the assaults were as CT Page 624 serious as claimed by the plaintiff.
The defendant has been the major supplier of funds for this marriage of some sixteen years. However, the plaintiff has made substantial contributions inside and outside the home. The children have been principally cared for as to all their needs since birth by the plaintiff. At the time of this hearing the defendant was definitely the superior wage earner and from his position was in a superior position to increase his earnings at a better rate than the plaintiff and also to acquire additional assets. It did not appear to me that there was a reasonable probability that these parties would reconcile. In addition, the parties had put up the family home for sale and had mutually divided their personal belongings. I find, therefore, that the marriage has broken down irretrievably.
Accordingly, the following orders are entered:
1. A decree dissolving the marriage on the ground of irretrievable breakdown may enter.
2. The plaintiff may resume the use of her maiden name which is restored to her, to wit: Gail F. Horan.
3. Custody of the minor children is granted to the plaintiff. The parties appeared before the Superior Court (DeMayo, J.) on December 20, 1990 and submitted their written stipulation regarding visitation rights pertaining to both parties which was approved at that time by the court.
Therefore, the defendant is awarded reasonable rights of visitation with both children and specifically in accord with the written stipulation of the parties. Said written stipulation is also approved by this court and the provisions thereof are made orders of this court and may either be set forth in detail in the judgment file or incorporated therein by reference. The specific rights of visitation set forth in said written stipulation may be enlarged by the parties by mutual agreement.
4. The defendant shall maintain his present medical insurance coverage for both children so long as the same is available through his place of employment, and the equivalent thereof after the same shall not be available through his employment. However, if such insurance coverage should no longer be available through the defendant's employment and the plaintiff shall have medical insurance at her place of employment, the children shall be enrolled under her plan and the parties shall share equally the added premium for the children. The defendant shall under these circumstances make the necessary arrangement to secure for the children such additional medical coverage provided under his CT Page 625 present plan and not provided for under the plaintiff's plan at that time. The premium cost for this additional coverage shall be shared, one-third by the plaintiff and two-thirds by the defendant.
The plaintiff shall consult with the defendant and obtain his prior approval, except in case of real emergency, before incurring extraordinary medical, dental, psychiatric or psychological expenses for either child, and this shall include any orthodontic, periodontic and ophthalmological treatment and expenses. The defendant shall not unreasonably withhold his approval.
Until the plaintiff secures any kind of employment, the defendant shall pay for all uninsured and unreimbursed expenses for the children. When the plaintiff obtains employment in any form, she shall pay for one-third of such expenses and the defendant shall pay the balance.
The foregoing shall be subject to the provisions of Conn. Gen. Stats. 46b-84 (c).
5. The defendant's financial affidavit does not list life insurance. He did testify that he was covered by life insurance through his employer equal to two times his annual salary.
The defendant is ordered to immediately designate his two children to be irrevocable beneficiaries on his life insurance until the youngest reaches majority with payment of the proceeds to be made to the plaintiff in trust for the benefit of the children during their minority. He shall furnish proof of such action to the plaintiff within 60 days and on the annual premium due date thereafter.
6. The plaintiff lists a Metropolitan Life Insurance Policy of $27,257.00. She is ordered to immediately designate her two children to be irrevocable beneficiaries on her life insurance until the youngest reaches majority with payment of the proceeds to be made to the defendant in trust for the benefit of the children during their minority. She will also furnish proof to the defendant as provided above for him.
7. The plaintiff may avail herself of the provisions of 38-262d of the Conn. Gen. Stats. to be a beneficiary of the defendant's medical insurance program through his employer. The defendant shall pay for the extra premium to cover the plaintiff for one year from this date or until she becomes employed and has medical insurance available through her employment. For any period beyond the year that she remains a beneficiary of the defendant's medical insurance program, she shall pay for the extra premium to cover her and shall hold the defendant harmless. She shall at all times CT Page 626 be responsible for and pay all her uninsured or unreimbursed medical expenses.
8. The defendant shall pay to the plaintiff the sum of One Hundred Sixty-Five ($165.00) Dollars per week for the support of each of the two children for a total of $330.00 per week commencing February 8, 1991.
9. a. The defendant, as permanent periodic alimony, shall pay to the plaintiff the sum of Seventy ($70.00) Dollars per week unless the plaintiff shall remarry, cohabit with a non-related male person within the provisions of 46b-86 (b) of the Conn. Gen. Stats., or either party shall die, whichever condition shall occur first. Payment shall commence February 8, 1991.
b. The orders for the payment of child support and permanent alimony are made payable by wage execution against the defendant forthwith.
10. a. The parties are selling the family residence. Until the property is sold the defendant shall continue to pay all sums pertaining to the house as well as all other orders pendente lite. In this connection any repairs needed on the property prior to the sale shall be borne equally by the parties.
b. After the sale of the property, the net proceeds shall be divided as follows: to the plaintiff, sixty-five percent of the same, and to the defendant thirty-five percent. Net proceeds figure shall be arrived at by subtracting from the selling price the balance of the mortgage then due, any other charges then due such as taxes, insurance premiums, sewer assessments, closing costs and expenses and any outstanding costs of repair incurred prior to the sale.
c. At the closing of the sale of the family residence, in addition to the above, the defendant shall pay to the plaintiff out of his share of the net proceeds any arrears in pendente lite orders, as well as the balance owed on the installment order to pay on account of her counsel fees. The defendant shall also pay his share of the balance owed on counsel fees for the children's attorney.
d. At the closing the plaintiff shall pay out of her share of the net proceeds her share of the balance owed on counsel fees for the children's attorney.
11. It is my understanding that the parties have pretty much divided the personal property in the residence to their satisfaction. At the time of the sale, any tools that may be remaining and have not been sold or divided in kind shall be the CT Page 627 sole property of the defendant. In addition, the defendant shall receive as his sole property the bedroom set and rocking chair that he had as a child as soon as his children are no longer using the same and any other items that are unmistakably his personal property having been heretofore used as such.
12. It is ordered that the defendant pay all sums due under any pendente lite orders of the court to the effective date of the permanent orders entered hereunder. Payment of all such sums to be made within thirty days after the date of this memorandum or out of the defendant's share of the net proceeds of the sale of the family residence.
13. Counsel for the children has filed with the court her statement for services rendered. There is a balance claimed of $687.50 which is found should be paid. The plaintiff shall pay $230.25 as her share and the defendant shall pay $457.25 as his share. Payment shall be made within sixty days unless sooner paid out of the net proceeds as set forth above.
14. The defendant shall pay to the plaintiff the sum of Five Thousand ($5,000.00) Dollars on account of counsel fees plus $253.30 costs for a total of $5,253.30. Unless the same is paid out of the defendant's share of the net proceeds of the sale as provided above, the defendant shall pay the same in four approximately equal installments commencing with the first payment on or before April 30, 1991 and additional payments on or before July 30, October 30, 1991 and January 30, 1992.
15. The defendant shall be entitled to take the two children as deductions for federal income tax purpose so long as he pays the amounts ordered herein for the support of each child.
16. The plaintiff shall be responsible and pay for all the liabilities listed on her financial affidavit of October 17, 1990 and shall hold the defendant harmless therefrom.
17. The defendant shall be responsible and pay for all the liabilities listed on his financial affidavit of October 17, 1990 and shall hold the plaintiff harmless therefrom.
Counsel for the parties are requested to collaborate in the preparation of the judgment file for the court's approval and signature.
JOHN OTTAVIANO, JR., STATE TRIAL REFEREE